**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**


IN RE:
GREGORY J. SMITH, d/b/a Gregory J.
Smith, d/b/a Smith Financial Services,
d/b/a The Smith Agency,

                              Debtor.

_____


GREGORY J. SMITH, d/b/a Gregory J. Smith,
d/b/a Smith Financial Services,
d/b/a The Smith Agency,

                              Appellant,          Case No.  2:07-cv-101-FtM-34
                                                  Bankr. No. 9:05-bk-13111-ALP
vs.

THERESA WILSON, individually and as
Trustee of the Wilson 1992 Trust dated
8/7/92, KAREN JUDSON, individually
and as Trustee of the Wilson 1992 Trust
dated 8/7/92 and KAREN JUDSON, individually
and as Trustee of the Karen Judson Separate
Property Trust dated 6/7/01,

                              Appellees.

_____

IN RE:
GREGORY J. SMITH, d/b/a Smith Financial Services,
d/b/a Gregory J. Smith,

                      Debtor.

_____

GREGORY J. SMITH, d/b/a The Smith Agency,
d/b/a Smith Financial Agency,
d/b/a Gregory J. Smith,

                      Appellant,       Case No.  2:07-cv-102-FtM-34
                                       Bankr. No. 9:05-bk-13111-ALP
vs.

THERESA WILSON, individually and as
Trustee of the Wilson 1992 Trust dated
8/7/92, KAREN JUDSON, individually
and as Trustee of the Wilson 1992 Trust
dated 8/7/92 and KAREN JUDSON, individually
and as Trustee of the Karen Judson Separate
Property Trust dated 6/7/01,

                      Appellees.

_____

## O R D E R

      **THIS CAUSE** is before the Court on a consolidated appeal[1] by Appellant Gregory J.

Smith ("the Debtor") of the United States Bankruptcy Court's Findings of Facts, Conclusions

of Law, and Memorandum Opinion (Adv. Dkt. No. 36; Order) and Final Judgment (Adv. Dkt.

No. 37; Adversary Final Judgment), which were both entered on December 13, 2006, in

_____

     [1] On May 15, 2007, the Court entered an Order (Dkt. No. 20) consolidating Case Number 2:07-cv-101-FtM-34 and Case Number 2:07-cv-102-FtM-34.

Adversary Case Number 9:05-ap-670-ALP, and Order Denying Discharge of Debtor (Bankr. Dkt. No.134; Order Denying Discharge), which was entered on December 14, 2006, in Case Number 9:05-bk-13111-ALP[2].  Appellant Gregory J. Smith filed his initial brief on April 25, 2007.  See Brief of Appellant (Dist. Dkt. No. 18; Initial Brief).  On May 21, 2007, Appellees Theresa Wilson and Karen Judson (collectively "Appellees") filed an answer in opposition to the Initial Brief.  See Answer Brief of Appellees Wilson & Judson (Dist. Dkt. No. 22; Answer Brief).  Appellant filed a reply to the Answer Brief on June 18, 2007.  See Reply Brief of Appellant (Dist. Dkt. No. 27; Reply Brief).  Accordingly, this appeal is ripe for review.

## I.    Background

On October 1, 2002, the Debtor and his wife Deborah K. Smith lived in Alpine, California, and were licensed insurance agents.  See Final Evidentiary Hearing (Adv. Dkt. No. 23; Final Evidentiary Hearing) at 18, 20, 143.  The Debtor had been in the business of selling life insurance, annuities, and investments for approximately 25 years[3] and had resided in San Diego County, California for over 20 years.  See id. at 18, 20, 23.  The Debtor was associated with Rushing River Financial Services ("Rushing River") and Legacy

---

[2]  The Debtor appeals the bankruptcy court's denial of his discharge, pursuant to 11 U.S.C. § 727(a)(2)(A).  In the instant Order, the Court will refer to the docket numbers from this Court as "Dist. Dkt. No. __".  All of the district docket numbers referred to by this Court were filed in Case No. 2:07-cv-101-FtM-34.  With respect to the docket numbers assigned by the bankruptcy court, the Court will refer to the docket entries as follows: (1) docket entries from the adversary proceeding will be referred to as "Adversary Dkt. No. ___"; and (2) docket entries from the Debtor's bankruptcy proceeding will be referred to as "Bankr. Dkt. No. ____".  The docket entries from the Debtor's bankruptcy proceeding were filed  in Case No. 2:07-cv-101-FtM-34, and the docket entries from the Debtor's adversary proceeding were filed in Case No. 2:07-cv-102-FtM-34.

[3]  According to the Debtor's Statement of Financial Affairs, he earned $144,908 in 2001 and $188,080 in 2002.  See Final Evidentiary Hearing at 22; Voluntary Petition (Adv. Dkt. No. 10) at 28.  At the Final Evidentiary Hearing, the Debtor acknowledged that he generated the majority of the earnings in his household.  See Final Evidentiary Hearing at 138.

Financial Services ("Legacy"), which are both broker dealers. See id. at 114, 119.[4]  Rushing

River approved and sanctioned the Debtor's sale of investments in Alpha Telecom, Inc.

("Alpha"), which involved the purchase of pay phones that were to have a minimum monthly

guaranteed return.  See id. at 31-32, 114, 136; Order at 4.  The Debtor sold investments in

Alpha to several individuals, many of whom were retired.  See Final Evidentiary Hearing at

36-37.  These individuals lost their entire investment in Alpha when the Securities and

Exchange Commission filed suit against Alpha alleging securities fraud and obtained an

injunction prohibiting Alpha from continuing its business which resulted in Alpha filing for

bankruptcy.  See id. at 32-33, 35-36, 108-111; Order at 4; Complaint for Professional

Negligence, Fraud, Elder Abuse and Unfair Competition (Adv. Dkt. No. 7, Exh. G;

Shackelford Action) at 6.  On August 12, 2002, Appellees named the Debtor and his wife as

defendants in a lawsuit filed in the Superior Court of California, County of San Diego,

alleging, inter alia, professional negligence, breach of fiduciary duty, and fraud.  See

generally Complaint for Professional Negligence, Breach of Fiduciary Duty, Violation of

Statutes, Fraud, Negligent Misrepresentation (Adv. Dkt. No. 7, Exh. F); see also Final

Evidentiary Hearing at 39.  By the time the Appellees filed their action, the Debtor had

already been named as a respondent in a National Association of Securities Dealers

arbitration proceeding commenced by Richard Hernandez, Catherine Hernandez, and

Virginia C. Lee and as a defendant in a lawsuit filed by James and Laree Shackelford in  the

Superior Court of California, County of San Diego.  See generally National Association of

---

[4]  The Debtor also acted as a financial planner using the fictitious names "Smith Financial Services" and
"The Smith Agency."  See Order at 3-4.

Securities Dealers Dispute Resolution, Inc. (Adv. Dkt. No. 7, Exh. B); Shackelford action; <u>see also</u> Final Evidentiary Hearing at 38.

In October of 2002, the Debtor and his wife traveled to Fort Myers, Florida, and stayed with the Debtor's cousin. <u>See</u> Final Evidentiary Hearing at 25, 40.[5]  On October 9, 2002, the Debtor and his wife opened a joint bank account at First National Bank of Florida ("First National Bank"), which is now known as Fifth Third Bank, and deposited $100,000 from their California bank account into that account. <u>See</u> <u>id.</u> at 121, 158, 170; Deposition of Gregory J. Smith (Adv. Dkt. No. 15, Exh. 1; April 19, 2006 Deposition) at 32. In addition, the Debtor and his wife met with Edward R. Miller of the law firm of Miller & Hollander on October 11, 2002, for a bankruptcy consultation. <u>See</u> <u>id.</u> at 41-42.[6]  On October 15, 2002, the Debtor and his wife obtained Florida driver's licenses listing their address as 910 Virginia Avenue, Fort Myers, Florida, which is the address of the Debtor's cousin. <u>See</u> <u>id.</u> at 44-48. The following day, the Debtor and his wife entered into a contract to purchase a home in Cape Coral, Florida (the "Cape Coral House"). <u>See</u> <u>id.</u> at 51-52; April 19, 2006 Deposition at Plaintiff's Exh. 6. The contract provided that the closing must occur prior to December 15, 2002. <u>See</u> Final Evidentiary Hearing at 52, 70; April 19, 2006 Deposition at Plaintiff's Exh. 6. On October 17, 2002, the Debtor and his wife obtained a cashier's check in the amount

---

[5]  During the Final Evidentiary Hearing, the Debtor testified that he came to Florida with the intention of moving here. <u>See</u> Final Evidentiary Hearing at 120.  In addition, both the Debtor and his wife acknowledged that the problem with the Alpha phones was a factor in their decision to move to Florida. <u>See id.</u> at 103, 147-48.

[6]  At the Final Evidentiary Hearing, the Debtor testified that he and his wife had arranged for the appointment with Mr. Miller a couple of days before October 11, 2007. <u>See</u> Final Evidentiary Hearing at 43.

of $10,687[7] from First National Bank payable to David Weekly Homes, the builder of the Cape Coral House.  See Final Evidentiary Hearing at 53-55; April 19, 2006 Deposition at Plaintiff's Exh. 7, 12.

The Debtor and his wife returned to California in November of 2002.  See Final Evidentiary Hearing at 148.  On November 9, 2002, the Debtor and his wife entered into a listing agreement to sell their home in Alpine, California ("the Alpine House").  See id. at 55-56; April 19, 2006 Deposition at Plaintiff's Exh. 1.  The closing statement for the purchase of the Cape Coral House was executed on December 11, 2002.  See Final Evidentiary Hearing at 57; April 19, 2006 Deposition at Plaintiff's Exh. 4.  On December 12, 2002, the Debtor and his wife paid $35,516.58, the remainder of their down payment on the Cape Coral House, to David Weekley Homes from their First National Bank account and executed a note on their Cape Coral Home for $170,900.  See Final Evidentiary Hearing at 58-59, 65-66, 123-24; April 19, 2006 Deposition at Plaintiff's Exh. 8, 12.

The Debtor and his wife had their depositions taken in the case filed by the Appellees on December 16 and 17 of 2002.  See Final Evidentiary Hearing at 70-72.  According to the transcript of the Debtor's December 16, 2002 deposition ("December 16, 2002 Deposition"), the following exchange occurred between counsel for the Appellees and the Debtor:

[COUNSEL]  You still live on Boulders there in Alpine?

[DEBTOR]    Yes.

[COUNSEL]  Do you have any plans to move.

--------

[7] This amount represented a deposit of earnest money for the purchase of the Cape Coral House.  See Final Evidentiary Hearing at 55.

[DEBTOR]    No.

<u>See</u> Notice of Filing (Adv. Dkt. No. 9; December 16 and 17, 2002 Depositions) at 6; Final

Evidentiary Hearing at 72-73.[8]  A review of the transcript from the deposition taken of the

Debtor's wife on December 17, 2002 ("December 17, 2002 Deposition") reveals that the

following colloquy occurred between counsel for the Appellees and the Debtor's wife:

> [COUNSEL]         Have you lived in California, in San Diego County
> at all times since your date of marriage?
>
> [MRS. SMITH]       Yes, we have.
>
> [COUNSEL]         Do you have any plans to move from your present
> residence address?
>
> [MRS. SMITH]       Not at this time.

<u>See</u> December 16 and 17, 2002 Depositions at 13.

On December 20, 2002, the Debtor and his wife executed a contract for the sale of

the Alpine House.  <u>See</u> Final Evidentiary Hearing at 84; April 19, 2006 Deposition at Exh. 2.

During the first week of January of 2003, the Debtor and his wife moved into the Cape Coral

House.  <u>See</u> Final Evidentiary Hearing at 41, 100, 148.  The Debtor's deposition in the

Creditor's case was completed on January 20, 2003 ("January 20, 2003 Deposition").  <u>See</u>

<u>id.</u> at 88.  During this deposition, the Debtor reaffirmed his prior testimony but also testified

that his plans had changed and he was now planning on moving to Florida in the next three

or four weeks.  <u>See</u> <u>id.</u> at 88-93, 129-132, 140; Order at 6.

---

[8]  At the Final Evidentiary Hearing, the Debtor stated that he believed that the above exchange was incorrectly recorded "because [he and his wife] were making plans to move to Florida."  <u>See</u> Final Evidentiary Hearing at 77.  Nevertheless, the Debtor later acknowledged that he had reaffirmed this testimony at a subsequent deposition.  <u>See</u> <u>id.</u> at 140.

On January 27, 2003, the Debtor's wife instructed the closing agent on the Alpine House to wire the proceeds of the sale, which amounted to $281,762.94, to the First National Bank account.  <u>See</u> Final Evidentiary Hearing at 86-87, 167; April 19, 2006 Deposition at Defendant's Exh. 3.  On that same date, the Debtor and his wife each changed one answer that they had given during their respective December 16, 2002 and December 17, 2002 Depositions.  The Debtor stated that the correct answer to the question regarding whether he had any plans to move was "moving to Florida."  <u>See</u> December 16 and 17, 2002 Depositions at 9.  Similarly, the Debtor's wife changed her answer to the question regarding whether she had any plans to move from the Alpine residence to "moving to Florida Jan. 25, 2003".  <u>See</u> <u>id.</u> at 16.  The sale of the Alpine House closed on January 28, 2003.  <u>See</u> Final Evidentiary Hearing at 85, 87; April 19, 2006 Deposition at Defendant's Exh. 3.

Between January 28, 2003 and March 21, 2003, the Debtor's wife contacted the holder of the mortgage on the Cape Coral House and inquired as to the payoff amount.  <u>See</u> Final Evidentiary Hearing at 95, 153.  The Debtor and his wife received a letter in response to the inquiry on March 21, 2003, and on April 1, 2003, the Debtor's wife paid off the mortgage on the Cape Coral House with a check in the amount of $171,473.76 to National City Mortgage Company.  <u>See</u> Final Evidentiary Hearing. at 95-97, 126-127, 153-154; April 19, 2006 Deposition at Plaintiff's Exh. 9, 10.

## II.    Procedural History

On June 30, 2003, the Debtor and his wife filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code in the Fort Myers Division of the United States Bankruptcy Court for the Middle District of Florida.  <u>See generally</u> Voluntary Petition.  Exactly two years later,

the Debtor filed a Notice of Voluntary Conversion to Chapter 7 Case as to Debtor, Gregory J. Smith, resulting in the Debtor's case being separated from his wife's Chapter 13 case. <u>See</u> Initial Brief at 8; Order at 1.

On September 9, 2005, Appellees filed an adversary proceeding against the Debtor. <u>See</u> Plaintiffs' Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A) (Adv. Dkt. No. 1; Complaint).  In the Complaint, the Appellees asserted that the Debtor should be denied a discharge, pursuant to 11 U.S.C. § 727(a)(2)(A), because he  acted with the intent to hinder, defraud, or delay his creditors when he made the following transfers, which occurred within one year of filing his Voluntary Petition: (1) the December 16, 2002, transfer of money to David Weekly Homes for the purchase of the Cape Coral House ("Count I"); and (2) the transfer of money to National City Mortgage to pay off the mortgage on the Cape Coral House ("Count II").  <u>See generally</u> Complaint.[9]  The Debtor filed an answer denying that he made the subject transfers with the intent to hinder, defraud, or delay his creditors. <u>See generally</u> Answer to Plaintiffs' Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A) (Adv. Dkt. No. 4), filed on September 19, 2005.

On November 23, 2005, the Debtor filed a motion for summary judgment.  <u>See</u> Smith Motion for Summary Judgment (Adv. Dkt. No. 8; Motion for Summary Judgment).  In the

_____

[9] On December 11, 2006, the bankruptcy court granted the Creditor's motion to amend the pleadings. <u>See</u> Order Granting Plaintiffs, Theresa Wilson and Karen Judson's Motion to Amend Pleadings to Conform to the Evidence (Adv. Dkt. No. 33).  In the motion to amend the pleadings, the Appellees asked the bankruptcy court to amend the pleadings to also allege that the October 17, 2002 transfer of money to David Weekley Homes constituted a fraudulent transfer.  <u>See</u> Plaintiffs, Theresa Wilson and Karen Judson's Motion to Amend Pleadings to Conform to the Evidence (Adv. Dkt. No. 25; Motion to Amend Pleadings) at 1-2.  The Appellees also noted that the Debtor's transfer of funds to National City Mortgage occurred on April 1, 2003.  <u>See</u> <u>id.</u> at 2.

Motion for Summary Judgment, the Debtor argued that the funds used in the subject transfers came from a bank account held by the Debtor and his wife as tenants by the entirety and that he and his wife did not have any joint unsecured creditors.  See id. at 2. As a result, the Debtor argued that the transfers amounted to transfers of exempt property to exempt property and could not constitute transfers to hinder, delay, or defraud his creditors.  See id. at 2-4.

The bankruptcy court entered an Order on Motion for Summary Judgment (Adv. Dkt. No. 16; Order on MSJ) on May 4, 2006.  In the Order on MSJ, the bankruptcy court noted that if the Debtor and his wife did not have any joint creditors at the time of the subject transfers and the funds used in the transfer came from a tenancy by the entirety bank account, then the transfer of the funds could not have hindered, delayed, or defrauded the Debtor's creditors.  See Order on MSJ at 4.  Nevertheless, the bankruptcy court noted that it would not be proper to resolve the case at the summary judgment stage because the facts surrounding the transfers were complex and disputed by the parties.  See id. at 5.

Thereafter, on August 23, 2006, the bankruptcy court conducted a Final Evidentiary Hearing, see generally Final Evidentiary Hearing, and on December 13, 2006, entered the Order finding that the Debtor was not entitled to a general discharge, pursuant to 11 U.S.C. § 727(a)(2)(A), see generally Order.  In the Order, the bankruptcy court noted that, as a result of Alpha's collapse, the Debtor lost a major source of his income and faced a number of lawsuits from individuals who lost their entire investment in Alpha.  See id. at 10.  The bankruptcy court further observed that, under California's bankruptcy exemption laws, the Debtor could protect only $75,000.00 of the equity in the Alpine House from the individuals

who were able to obtain judgments against him.  See id.  After summarizing the position of

the parties[10] and the relevant legal authority, the bankruptcy court found that the Debtor's

claim that he did not purchase the Cape Coral House with the intent to hinder, delay, or

defraud his creditors was "belied by [the] record".  See id. at 11.  After thoroughly reviewing

the facts, the bankruptcy court concluded:

> In sum, this Court is satisfied that, based on the record[11], the [Appellees] have
> established by the requisite degree of proof that the Debtor and his wife
> transferred non-exempt assets into exempt property with the specific intent to
> hinder, delay and defraud the Plaintiffs and other creditors and, therefore, the
> Debtor is not entitled to a general discharge by virtue of Section 727(a)(2)(A)
> of the Bankruptcy Code.

See id. at 3-7, 11.

Following the entry of the Order, the bankruptcy court entered Final Judgment in favor

of the Appellees as to both Counts I and II.  See Adversary Final Judgment.  The bankruptcy

court also entered an Order in the Debtor's Chapter 7 bankruptcy case denying the Debtor

a discharge, pursuant to § 727(a)(2)(A).  See Order Denying Discharge.

### III.    Standard of Review

This Court has jurisdiction to hear an appeal from a final judgment entered by the

United States Bankruptcy Court.  See 28 U.S.C. § 158(a).  In functioning as an appellate

---

[10] The Appellees argued that Debtor and his wife made the above transfers in order to take advantage of the Florida homestead exemption and put their equity in the Alpine House out of the reach of their creditors. See Order at 7-8; Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Adv. Dkt. No. 26; Appellees' Trial Brief) at 14, 21-23.  They also contended that the funds used by the Debtor and his wife in the subject transfers were non-exempt.  See Appellees' Trial Brief at 20-21.  In comparison, the Debtor asserted that he did not make the transfers with the actual intent to hinder, defraud, or delay his creditors.  See Order at 8; Defendant's Trial Memorandum (Adv. Dkt. No. 24).

[11] In the Order, the bankruptcy court included an extensive summary of the evidence in the adversary proceeding, including a discussion of the testimony the Debtor provided at the December 16th and 20th depositions, as well as the change the Debtor made to his testimony at the December 16th deposition on January 27, 2003.  See Order at 3-7.

- 11 -

court, the Court reviews <u>de novo</u> the legal conclusions of a bankruptcy court but must accept a bankruptcy court's factual findings unless they are clearly erroneous. <u>See</u> <u>In re JLJ Inc.</u>, 988 F.2d 1112, 1116 (11th Cir. 1993). "A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948). In addition, the Court may not make independent factual findings. <u>See</u> <u>In re JLJ Inc.</u>, 988 F.2d at 1116; <u>In re Englander</u>, 95 F.3d 1028, 1030 (11th Cir. 1996). Accordingly, "[i]f the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings." <u>In re JLJ Ind.</u>, 988 F.2d at 1116.

## IV.    Discussion

In his Initial Brief, the Debtor argues that an individual's mere conversion of assets from nonexempt to exempt property within the year prior to filing for bankruptcy does not by itself justify the denial of the individual's discharge. <u>See</u> Initial Brief at 11-13. Additionally, the Debtor maintains that the bankruptcy court should not have denied him a discharge merely because he obtained legal advice regarding pre-bankruptcy planning and did not tell a potential creditor that he was going to be moving to Florida, <u>see</u> Initial Brief at 11-14, 16-17, and that none of his actions are sufficient to demonstrate that he had the actual intent to hinder, delay, or defraud his creditors,[12] <u>see id.</u> at 14. Finally, the Debtor contends that the transfers did not result in the conversion of nonexempt to exempt property because the

---

[12]  The Court finds it noteworthy that the Debtor failed to include any discussion of his December 16, 2002 Deposition or the subsequent change he made to this testimony in his "Statement of Facts." <u>See</u> Initial Brief at 7-8.

funds came from the Florida bank account which was held by the Debtor and his wife as tenants by the entirety.  See id. at 15-16.[13]

In their Answer Brief, the Appellees respond that the Debtor has failed to establish that the bankruptcy court clearly erred in finding that he had the intent to defraud, hinder, or delay his creditors when he moved to Florida and converted his assets.  See generally Answer Brief.  While Appellees concede that the Debtor's conversion of nonexempt assets into exempt assets alone would not justify the denial of his discharge in bankruptcy, they contend that the Debtor's testimony at the December 16, 2002 Deposition that he had no intention of moving from California even though he had already obtained a Florida driver's license, purchased the Cape Coral House, and put the Alpine House up for sale constitutes direct evidence that the Debtor acted with the intent to hinder, delay, or defraud his creditors. See id. at 21-29.

The Debtor replies that the facts outlined by the bankruptcy court in its Order "reveal that there was complete disclosure of all transfers and assets."  See Reply Brief at 3-4.   In addition, relying on In re Crater, 286 B.R. 756 (D. Ariz. 2002), the Debtor contends that the fact that actions were pending against him at the time he made the transfers does not establish that he had the intent to do anything other than maximize his exemptions. See id. at 4-6.

---

[13]  While the Debtor appears to concede at times that the transfer of funds at issue resulted in the conversion of non-exempt into exempt property, see Initial Brief at 11-13,16, he also argues that the transfer of funds did not result in the conversion of nonexempt into exempt property because the funds came from a tenancy by the entirety bank account, see id. at 15-16.  The Appellees did not respond to the Debtor's tenancy by the entirety argument.  See generally Answer Brief.

As noted above, the Appellees objected to the Debtor's discharge based on 11 U.S.C.

§ 727(a)(2)(A).  Section 727(a)(2)(A) provides, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless –

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . or has permitted to be transferred . . .

(A) property of the debtor, within one year before the date of the filing of the petition . . .

11 U.S.C. § 727(a)(2)(A).   A plaintiff in an adversary proceeding bears the burden of

establishing the nondischargeability of a debt by a preponderance of the evidence.  See

Marine Midland Bank, N.A. v. Mollon, 160 B.R. 860, 864 (M.D. Fla. 1993); Fed.R.Bank.P.

4005.   In order to prevail on a § 727(a)(2)(A) claim, a plaintiff must demonstrate the

following: (1) a transfer of property has taken place; (2) the property transferred was property

of the debtor; (3) the transfer took place within one year of the date of the filing of the

bankruptcy petition; and (4) at the time of the transfer, the debtor possessed the intent to

hinder, delay, or defraud a creditor.  See In re Marrama, 445 F.3d 518, 522 (1st Cir. 2006);

Marine Midland Bank, N.A., 160 B.R. at 864; In re Ingersoll, 124 B.R. 116, 121 (M.D. Fla.

1991).

In the instant case, the parties agree that the only element at issue is whether the

Debtor had the requisite intent to hinder, delay, or defraud his creditors.  See Initial Brief at

10; Answer Brief at .  With respect to this element, a creditor must prove that, at the time of

the transfer, the debtor possessed the actual intent to hinder, delay, or defraud a creditor.

See Matter of Krehl, 86 F.3d 737, 743 (7th Cir. 1996);  In re Miller, 39 F.3d 301, 306 (11th

Cir. 1994); In re Carey, 938 F.2d 1073, 1077 (10th Cir. 1991); In re Adeeb, 787 F.2d 1339,

1342 (9th Cir. 1986).  A debtor's conversion of assets from non-exempt to exempt property

alone is not sufficient to establish an actual intent to defraud.  See Matter of  Bowyer, 932

F.2d 1100, 1102 (5th Cir. 1991); Matter of Smiley, 864 F.2d 562, 566 (7th Cir. 1989); In re

Johnson, 880 F.2d 78, 83 (8th Cir. 1989); In re Carey, 938 F.2d at 1076; Ford v. Poston, 773

F.2d 52, 54 (4th Cir.1985).  Nevertheless, actual intent may be established by circumstantial

evidence or it may be inferred from a debtor's actions.  See In re Dennis, 330 F.3d 696, 701-

02 (5th Cir. 2003);  Matter of Smiley, 864 F.2d at 566; In re Adeeb, 787 F.2d at 1343.  In

addition, courts have identified several factors, which are often referred to as "badges of

fraud", that tend to demonstrate that a debtor had an actual intent to defraud his creditors.

See In re Marrama, 445 F.3d at 522; In re Dennis, 330 F.3d at 702; In re Ingersoll, 124 B.R.

at 121-22. The badges of fraud include:

> (1) [t]he lack or inadequacy of consideration for the property transferred;
>
> (2) [t]he existence of a family, friendship, or other close relationship between the transferor and the transferee;
>
> (3) [t]he transferor's retention of the possession, control, benefits, or use of the property in question;
>
> (4) [t]he financial condition of the transferor both before and after the transfer took place (i.e., whether the transfer resulted in insolvency);
>
> (5) [t]he cumulative effect of these transactions and course of conduct after the onset of financial difficulties or dependency or threat of suit by creditors; and
>
> (6) [t]he general chronology and timing of the transfer in question.

In re Ingersoll, 124 B.R. at 121-22; see also  In re Marrama, 445 F.3d at 522; In re Dennis,

330 F.3d at 702.  A bankruptcy court's determination that a debtor had the requisite intent

to hinder, delay, or defraud a creditor is a factual finding that a district court, functioning as an appellate court, must review for clear review.  See In re Dennis, 330 F.3d at 701; Matter of Krehl, 86 F.3d at 743-44;  In re Miller, 39 F.3d at 307; Matter of Smiley, 864 F.2d at 566.

As an initial matter, the Court finds that the Debtor fails to accurately summarize the bankruptcy court's basis for denying him a general discharge.  A review of the Order reveals that the bankruptcy court did not deny the Debtor a discharge solely because he obtained legal advice regarding pre-bankruptcy planning and failed to tell the Appellees that he was moving to Florida.  In the Order, the bankruptcy court stated that it based its finding that the Debtor was not entitled to a general discharge, pursuant to 11 U.S.C. § 727(a)(2)(A), on the record as a whole.  See Order at 11.  Moreover, the bankruptcy court did not merely find that the Debtor failed to tell the Appellees that he was moving to Florida.  Instead, the bankruptcy court noted that, while the Debtor testified at the December 16, 2002 Deposition that he did not have any plans to move from his Alpine House, the Debtor, in fact, intended to establish a residence in Florida at the time he gave this testimony and had already started taking steps to accomplish this goal.  See id. at 6-7.  Thus, it is clear that the bankruptcy court determined that the Debtor manifested his intent to hinder, delay, or defraud the Appellees by being dishonest with Appellees at the December 16, 2002 Deposition regarding his plans to move from the Alpine House.

The Court will next address the Debtor's argument that the transfers at issue could not constitute fraudulent transfers under § 727(a)(2)(A) because the funds used to purchase the Cape Coral House came from the First National Bank account which was held by the Debtor and his wife as tenants by the entirety and, thus, the transfers did not result in the

conversion of nonexempt to exempt property.  See Initial Brief at 15-16; see also Matter of Agnew, 818 F.2d 1284, 1290 (7th Cir. 1987) (recognizing that, in order to deny a discharge under § 727(a)(2)(A), "it must be shown that there was an actual transfer of valuable property belonging to the debtor which reduced the assets available to creditor and which was made with fraudulent intent.") (quoting 4 Collier on Bankruptcy, supra, para. 727.02[5], at 727-21 to -22.).  Pursuant to section 522(b)(3)(B) of the Bankruptcy Code, an individual debtor may exempt from his bankruptcy estate any interest in property held as a tenant by the entireties to the extent that such interest is exempt from process under applicable state law.  See 11 U.S.C. § 522(b)(2)(B).  Under Florida law, property held by a married couple as tenants by the entireties cannot be reached by a creditor to satisfy the individual debt of only one spouse.  See Mathews v. Cohen, No. 3:07-cv-121-J-32, 2007 WL 4557244, at * 2 (M.D. Fla. Dec. 21, 2007).  Thus, upon filing a bankruptcy petition, "a debtor may exempt his or her interest in property held as a tenant by the entireties provided the property meets all requirements under Florida law."  See In re Kepley, No. 2:06-cv-532-FtM-29, 2007 WL 2696567, at *2 (M.D. Fla. Sept. 10, 2007).

While the bankruptcy court did not explicitly address the issue of whether the First National Bank account was held by the Debtor and his wife as tenants by the entirety, it did find that the Debtor transferred non-exempt assets into exempt property in the instant case.  See Order at 11.  In making this determination, the bankruptcy court noted that the Debtor utilized the funds held by the Debtor and his wife in their California bank account[14] and the

---

[14] As noted above, the Debtor and his wife deposited $100,000 from their California bank account into the First National Bank account. California does not recognize tenancy by the entirety as a form of ownership. See Swan v. Walden, 156 Cal. 195, 196-97 (1909); Tischhauser v. Tischhauser, 142 Cal. App. 2d 252, 256 (Cal. App. 2 Dist. 1956).

equity in their Alpine House, which were both at least partially non-exempt assets, in purchasing the Cape Coral House. See Order at 10-11. Thus, the bankruptcy court looked beyond the status of the First National Bank account to the nature of the property that was transferred into the account in determining that the Debtor transferred non-exempt assets to exempt property within the year prior to filing for bankruptcy with the intent to hinder, delay, or defraud a creditor. Upon review of the record, the Court declines to find that the bankruptcy court erred in this determination.

Next, the Court considers whether the bankruptcy court clearly erred in concluding that the Debtor possessed the actual intent to hinder, delay, or defraud his creditors at the time he purchased the Cape Coral House and paid off the mortgage on that property. A review of the evidence in the instant case demonstrates that, in October of 2002, the Debtor decided to leave California, where he had lived for over 20 years, and move to Florida. See Final Evidentiary Hearing 20, 120. At that time, the Debtor faced several lawsuits from individuals who had lost their entire investment in Alpha, and, under the exemption laws in California, he only would have been able to save $75,000 of the equity in his Alpine House from the individuals who were able to obtain a judgment against him. See id. at 38-39; see also Cal. Civ. Proc. Code § 704.730(a)(2) (providing a $75,000 homestead exemption "if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit, and there is at least one member of the family unit . . . whose only interest in the homestead is a community property interest with the judgment debtor."). In comparison, in Florida, homestead property was exempt from the claims of judgment creditors. See also Fla. Const. art. X, § 4(a)(1).

Shortly after the Debtor and his wife arrived in Florida, they opened the First National Bank account using funds from their California bank account, attended a consultation with a bankruptcy attorney, obtained Florida driver's licenses, and entered into a contract for the purchase of the Cape Coral House. See Final Evidentiary Hearing at 41-42, 44-48, 51-52, 121, 158, 170. The Debtor and his wife then returned to California and listed the Alpine House for sale. See id. at 55-56, 148. Despite having engaged in all of the foregoing actions and having the specific intention of moving to Florida, the Debtor testified at the December 16, 2002 Deposition taken by Counsel representing the Appellees in a California action that he did not have any plans to move from his Alpine House. See December 16 and 17, 2002 Depositions at 6; Final Evidentiary Hearing at 72-73. The Debtor failed to correct this specific testimony until January 27, 2003, which is the same day that his wife instructed the closing agent to wire the proceeds from the sale of the Alpine House into the First National Bank Account. See December 16 and 17, 2002 Depositions at 9; Final Evidentiary Hearing at 86-87, 167. A few months later the Debtor used the proceeds from the sale of the Alpine House to payoff the mortgage on the Cape Coral House. See 126-127, 153-54.

Upon consideration of the foregoing, the Court finds that the circumstances surrounding the transfers at issue and the timing of various events in the instant case fully support the bankruptcy court's determination that the Debtor possessed the requisite intent at the time of the transfers to deny him a discharge under § 727(a)(2)(A). Indeed, the evidence in the instant case establishes that the Debtor did not merely convert non-exempt assets into exempt assets within the year prior to filing for bankruptcy but that he did so with the actual intent to hinder, delay, or defraud the Appellees and his other creditors. Thus, the

Court finds that the bankruptcy court did not clearly err in concluding that the Debtor possessed the actual intent to hinder, delay, or defraud his creditors at the time he purchased the Cape Coral House and paid off the mortgage on the property.[15]

### V.    Conclusion

Accordingly, upon due consideration, it is hereby **ORDERED**:

1.      The bankruptcy court's Findings of Facts, Conclusions of Law, and Memorandum Opinion (Adv. Dkt. No. 36) and Final Judgment (Adv. Dkt. No. 37), which were entered in Adversary Case Number 9:05-ap-670-ALP, and Order Denying Discharge of Debtor (Bankr. Dkt. No.134; Order Denying Discharge), which was entered in Case Number 9:05-bk-13111-ALP, are **AFFIRMED**.

2.      The Clerk of the Court is directed to transmit a certified copy of this Order to the Clerk of the bankruptcy court.

---

[15] As noted above, the Debtor relies on In re Crater in arguing that the fact that he made the transfers at a time when civil actions were pending against him does not establish that his intent was to do anything other than maximize his exemptions. See Reply Brief at 4-6. However, the Court finds the Debtor's reliance on In re Crater to be misplaced. While the District Court of Arizona did hold that the presence of badges of fraud related to timing factors alone are not sufficient to establish a prima facie case for denying a debtor a discharge from bankruptcy, the court also found that these badges of fraud can establish a prima facie case if a creditor can demonstrate deception, concealment, or debtor explanations that lack credibility. See In re Crater, 286 B.R. at 764-767. In the instant case, the Appellees have made such a showing.

3.    The Clerk of the Court is further directed to enter judgment consistent with this Order, close this case, and terminate any pending motions.

**DONE AND ORDERED** at Fort Myers, Florida, this 31st day of March, 2008.

*Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States District Judge

lc3

Copies to:

The Honorable Alexander L. Paskay, United States Bankruptcy Judge

Counsel of Record